UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
In re:                                                      Chapter 11
                                                            Case No.: 14-70200 (AST)
ANGELO TOSCANO,

                              Debtor.
--------------------------------------------------------X
ANGELO TOSCANO,
                                                            Adv. Pro. No.: 15-08192 (AST)
                              Plaintiff,

       - against -

ANTHONY TOSCANO,

                              Defendant.
--------------------------------------------------------X

**DECISION AND ORDER**
**GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
**AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Pending before the Court are the cross motions for summary judgment (the "Summary

Judgment Motions") filed by Plaintiff Angelo Toscano ("Angelo", "Debtor", or "Plaintiff")

("Plaintiff's Summary Judgment Motion"), and by his brother Defendant Anthony Toscano

("Anthony" or "Defendant" and together with Debtor, the "Parties") ("Defendant's Summary

Judgment Motion"). While the litigation between these brothers has been long running and wide

ranging, the issue presented in this adversary proceeding is narrow: whether Anthony may

enforce against Debtor a valid and enforceable judgment and judgment lien obtained against

Debtor by Suffolk County National Bank ("SCNB" and the "SCNB Judgment") that was later

assigned to Anthony. For the reasons stated below, summary judgment is granted in favor of

Anthony on the enforceability of the SCNB Judgment, denied as to sanctions Anthony sought

against Debtor for filing a frivolous lawsuit, and denied as to all declaratory relief sought by

1

Debtor.  However, because this Order does not resolve Debtor's limited claim objection as to the calculation of the amount of the Anthony Claim, it is not a final judgment.

## JURISDICTION AND VENUE

This Court has jurisdiction over this core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (B), (K) and 1334(b), and the Standing Orders of Reference in effect in the Eastern District of New York dated August 28, 1986, and as amended on December 5, 2012, but made effective *nunc pro tunc* as of June 23, 2011.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

The Court is not required to state findings of fact and conclusions of law when ruling on summary judgment motions, pursuant to FRCP 52(a)(3), as incorporated by Rule 7052 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## BACKGROUND AND PROCEDURAL HISTORY[1]

### *General background*

Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code[2] on January 20, 2014 (the "Petition Date").  Debtor owned interests in various parcels of real property at the Petition Date and owed various liabilities, including those arising under the SCNB Judgment entered in favor of SCNB and against Debtor and others on April 18, 2008 in the amount of $856,608.94; upon being indexed, the SCNB Judgment created a lien against Debtor's real property located in Suffolk County.  Anthony is not a named defendant under the SCNB Judgment, while Debtor, Debtor's wife, Angela Toscano, and the entity Southampton Tile & Marble Corp., are judgment debtors.

---

[1] The factual background and procedural history are taken from the pleadings, exhibits and other papers submitted by the Parties.

[2] Unless otherwise indicated, all statutory references are to the Bankruptcy Code.

Subsequent to the Petition Date, SCNB filed a proof of claim against Debtor's estate alleging a secured claim in the amount of $851,556.34 as of the Petition Date, which was designated as Claim #6 on the claims register (the "SCNB Claim").

On April 20, 2015, Debtor filed his Second Amended Plan of Reorganization (the "Plan") [main case; dkt item 67], and on April 23, 2015, filed a motion seeking an order authorizing and approving the sale of certain real property located at 1602 County Road 39, Southampton, Suffolk County, New York (the "1602 Property"), free and clear of all liens, claims and encumbrances with such liens, claims and encumbrances to attach to the proceeds of the sale, and for related relief (the "Sale Motion"). [main case; dkt item 71]

On or about May 28, 2015, SCNB assigned the SCNB Claim (the "Assignment of Claim") to Anthony (the "Anthony Claim").  [main case; dkt item 79]  The Assignment of Claim includes an assignment of the SCNB Judgment (the "Assignment of Judgment"), which provides that Anthony paid SCNB $900,000 in consideration for the assignment, and that the amount due on the SCNB Judgment is $933,453.59.

On June 10, 2015, Anthony filed an objection to the Sale Motion and the Plan (the "Anthony Objection"). [main case; dkt item 82] Anthony asserts that the amount of the Anthony Claim totals $933,453.59 as of May 28, 2015, plus 9% per annum interest thereafter at the daily rate of $170.62, and asserts that the Anthony Claim is a valid lien and encumbrance against, *inter alia*, the 1602 Property and other of Debtor's properties.

On June 12, 2015, Debtor filed a Modified Second Amended Plan of Reorganization (the "Modified Plan"). [main case; dkt item 87]  Debtor also commenced this adversary proceeding by filing a complaint on June 12, 2015 and filed a pre-answer Amended Complaint on June 26, 2015 (the "Complaint").  [dkt item 4]  In the Complaint, Debtor seeks a declaratory judgment

3

that the SCNB Judgment has been satisfied, that he is not liable under the SCNB Judgment, now the Anthony Claim, and that the lien created thereunder cannot be enforced against any of Debtor's properties.

This Court conducted a hearing on the Sale Motion and the Plan on June 17, 2015 (the "Hearing"), at which Debtor and Anthony announced an agreement which allowed for the sale of the 1602 Property, with a portion of the proceeds thereof in the agreed amount of $850,000 to be deposited (the "Original Deposit") into a non-interest bearing, segregated escrow account (the "Escrow Account"), along with specific additional deposits to be made by Debtor thereafter, all to be maintained by Debtor's counsel ("Escrow Agent").  Debtor and Anthony further agreed that the Escrow Account will be distributed to either the Debtor or Anthony depending on in whose favor this adversary is decided.  These agreements are memorialized in a Stipulation and Order signed by the Parties and so ordered by this Court on July 2, 2015 (the "Escrow Order").[3] [main case; dkt item 97]

On July 10, 2015, the Court entered an Order granting the Sale Motion.  [main case; dkt item 98]

On July 20, 2015, Defendant filed an Answer and Counterclaim seeking, *inter alia*, a

---

[3] The Escrow Order includes the following provisions:  Anthony asserts that the amount of the Bank Claim totals $933,453.59 as of May 28, 2015 which continues to accrue interest at the rate of 9% per annum in the amount of $170.62 per diem (the "Anthony Claim");… The Debtor hereby agrees that upon the Closing of the sale of the 1602 Property, he will deposit the sum of $850,000 (the "Original Deposit") into a non-interest bearing, segregated escrow account (the "Escrow Account") to be maintained by Goetz Fitzpatrick LLP ("GF" or "Escrow Agent") which shall be held in accordance with terms and conditions of this Stipulation and Order. The balance of the proceeds generated from the sale of the 1602 Property shall be distributed by the Debtor pursuant to the terms and conditions of the Modified Plan following entry of the confirmation order… The Anthony Claim shall continue to "accrue" interest at the rate of $170.62 per diem from and after December 17, 2015 until such time the Adversary Proceeding is resolved… The Parties acknowledge and agree that the Escrow Account will be distributed to either the Debtor or Anthony upon the final judicial determination or settlement of the Adversary Proceeding… The Escrow Agent shall release the Escrow Account as follows:
a. to the Debtor in the event the Adversary Proceeding is determined favorably to the Debtor;
b. to Anthony Toscano in the event the Adversary Proceeding is determined favorably to Anthony Toscano; or
c. in accordance with the terms of the written stipulation between the Parties.

declaratory judgment that the SCNB Judgment has not been satisfied and that it constitutes a lien on Debtor's real property where the SCNB Judgment has been indexed. [dkt item 6]

Debtor obtained confirmation of his Modified Plan by Order entered on September 1, 2015. [main case; dkt item 108]

On October 18, 2016, the Court entered a Stipulation and Order amending the Complaint to include a cause of action seeking to reduce the allowed amount of the SCNB Claim in the event Debtor is unsuccessful in his claim for declaratory relief (the "Amended Complaint"), and also provided that Debtor was to file a supplemental complaint by no later than November 14, 2016. [dkt item 34]

On November 14, 2016, Debtor filed a supplemental objection to the SCNB Claim seeking to reduce the SCNB Claim by $29,415.68, asserting SCNB made an improper interest calculation on its claim (the "Supplemental Objection"). [dkt item 35]

On December 14, 2016, Debtor filed Plaintiff's Summary Judgment Motion pursuant to Rule 56 of the Federal Rules of Civil Procedure, as incorporated by Rule 7056 of the Federal Rules of Bankruptcy Procedure, supported by his Statement of Undisputed Facts as required by Local Rule 7056-1. [dkt items 44-46] Debtor seeks summary judgment on his request for a declaratory judgment that Anthony cannot enforce the SCNB Judgment against his bankruptcy estate and, in effect, that the SCNB Judgment has been released and/or satisfied. [dkt item 44] Debtor does not seek relief on the Supplemental Objection.

On December 14, 2016, Anthony filed Defendant's Summary Judgment Motion supported by his Statement of Undisputed Facts as required by Local Rule 7056-1. [dkt items 37-43] Anthony seeks summary judgment that he may fully enforce the SCNB Judgment against Debtor's bankruptcy estate, and seeks attorney's fees as a sanction for Debtor filing a frivolous

lawsuit.  [dkt item 38] Anthony does not seek relief on the Supplemental Objection.

Each party filed memorandum of law in opposition to each other's motion for summary judgment along with declarations and replies.

On May 2, 2017, the Court heard oral arguments on the Parties' Summary Judgment Motions, at the conclusion of which, the Court took the Parties' Summary Judgment Motions under submission.

### *Factual background*

The following facts are drawn from the uncontested facts as set out in the Parties' respective Rule 7056-1 statements.  There are no material facts in dispute.  Debtor concedes that his theory for seeking to preclude Anthony from enforcing the SCNB Judgment and thus the Anthony Claim is that of an implied contract by which Anthony became liable to personally satisfy the debt underlying the SCNB Judgment, for which no writing exists, and that the existence or not of such an implied contract is a question of law to be decided on undisputed facts:

> The parties agree, as evidenced by their respective motions, that no additional evidence could be presented at a trial of this action. The parties do not ask the Court to find a disputed material fact to deny the other party summary judgment, but instead to interpret the undisputed facts and come to a binding legal conclusion. If the Court reviews the record on these motions and decides that the lack of a written agreement for Anthony to become co-obligated to pay the subject liens under certain conditions precludes a finding that Anthony agreed to become liable on those liens, then judgment should be entered in favor of Anthony. If, however, the Court finds that the parties' conduct at closing and afterward evidences an implied agreement that Anthony became co-obligated to pay the liens, the Court should enter judgment in favor of Angelo. Both sides acknowledge that there was no written agreement made at the December 2008 closing on the property located at 1530 County Road 39, Southampton, New York (the "1530 Property") to relieve [Debtor] of primary responsibility to satisfy the liens existing on the 1530 Property as of closing. Both sides agree what happened at the

closing and what happened afterward. There are no material facts in dispute.

Anthony's Motion disputes no fact except for the purported question of whether Anthony contractually agreed to pay a money judgment against the debtor held by [SCNB]. However, Anthony and Angelo agree that there is no express agreement or written contract to that effect. There are no disputed material facts at issue here.

Under the circumstances of this case, the existence of an implied contract is not a question of fact, but a question of law that is ripe for determination on the parties' competing summary judgment motions.

Plaintiff's Memorandum of Law in Opposition to Anthony Toscano's Motion For Summary Judgment. [dkt item 49, pp. 1-2]  Anthony filed a Local Rule 7056-1 counter statement of material facts, in which he denies certain of the facts alleged in Plaintiff's Rule 7056-1 statement.  [dkt item 56]  Although there are certain facts in dispute, the Parties agree on the material facts that are necessary for the Court to render a decision.  These undisputed facts include the following.

On May 6, 2008, after the SCNB Judgment had been entered, Anthony and Debtor entered into two (2) separate contracts (the "Contracts") for the exchange and sale of various parcels of real estate and other property interests (the "Sale Agreement"); the Contracts cross-reference one another and provide that each brother shall perform his obligations under the Contracts simultaneously.[4]  Under one of these Contracts (the "Co-owned Properties Contract"), Anthony and Angelo agreed to swap their respective ownership interests in certain properties (the "Co-owned Properties"), and the brothers negotiated the values to be ascribed to each Parties' interest in each of the Co-owned Properties.[5]  The ascribed values were not equal and as

---

[4] *See* Declaration of Gary M. Kushner ("Kushner Decl."), Exhibit 3, Section 16, Exhibit 4, Section 17.  [dkt item 44]
[5] *See* Plaintiff's Statement of Undisputed Facts in Support of his Motion for Summary Judgement ("Plaintiff's 7056 Statement") [dkt item 45], ¶¶ 39-40; Defendant's Counter Statement of Material Facts in Opposition to Plaintiff's

a result of their agreement, Debtor agreed to credit Anthony the sum of $544,900 as the excess value obtained by Debtor as a result of the property swap (the "Swap Credit").[6]  The Co-owned Properties Contract provides that the Swap Credit will be applied to Anthony as a credit against the purchase price of other real property under the Parties' other contract.[7]  Under the other contract dated May 6, 2008, Anthony also agreed to purchase, and the Debtor agreed to sell, Debtor's fee title interest in a certain property located at 1530 County Road, Southampton, New York (the "1530 Property") for the purchase price of $4,000,000.00 (the "1530 Contract").[8] Both Contracts contain a merger clause and are governed by the law of the State of New York.[9]

Pursuant to the 1530 Contract, Debtor agreed, *inter alia*, to (a) convey the 1530 Property to Anthony free and clear of liens, mortgages, judgments, tenants and occupants; (b) fund an escrow deposit in the sum of $250,000 as security for the Debtor's obligation to evict an existing tenant at the 1530 Property (the "Tenant Escrow"); and (c) provide Anthony with another credit in addition to the Swap Credit which reduced the balance of the purchase price due at the closing; the additional credit totaled $400,000, so along with the Swap Credit the total credit due to Anthony was $944,900, thus reducing the balance due from Anthony at the closing of the 1530 Property sale from $4,000,000 to $3,055,100 (the "Purchase Price Balance").  The Contracts provided for a closing date to occur within 60 days after execution; the Parties subsequently agreed to a December 23, 2008 closing date for the properties (the "Closing").

---

Motion for Summary Judgment ("Defendant's 7056 Counter-Statement") [dkt item 56], ¶¶ 39-40.

[6] *See* Kushner Decl., Exhibit 3, Section 2.03.

[7] *See Id*.

[8] *See* Kushner Decl., Exhibit 4.

[9] *See* Kushner Decl., Exhibit 3, Section 14; Exhibit 4, Section 14.

Debtor was unable to deliver free and clear title to the 1530 Property at Closing, as it was encumbered by (i) a first mortgage held by an entity known as 4 B's Realty, with an estimated indebtedness of approximately $2,230,000.00 (the "4 B's Realty Mortgage")[10]; (ii) a lien in favor of the Internal Revenue Service (the "IRS"), with a payoff of approximately $625,000; and (iii) the SCNB Judgment, with a payoff of approximately $698,000.00 plus interest from April 18, 2008.  In addition, Debtor did not have available the $250,000 required to fund the Tenant Escrow.[11]

The Parties opted to go forward with the Closing on both Contracts, but incident thereto, Anthony and Debtor entered into an agreement on December 23, 2008 that enabled the Closing to occur (the "12/23/08 Agreement").  This 12/23/08 Agreement consisted of (i) a security agreement Debtor executed in favor of Anthony dated December 23, 2008 (the "Security Agreement"); and (ii) a collateral pledge agreement Debtor executed in favor of Anthony dated December 23, 2008 (the "Pledge Agreement").

The Security Agreement provides:

> Angelo is compelled to pay unanticipated sums in satisfaction or reduction of an existing mortgage, a federal tax lien, a New York State tax lien and a judgment held by [SCNB] (the "Judgment"), all affecting the [1530] Property; and….
>
> Angelo will have insufficient monies from the proceeds of sale to pay all of the foregoing expenses; and ….
>
> [T]he parties wish to complete the contemplated transaction provided that Angelo furnishes security for payment of the foregoing expenses and also agrees to cooperate in recovering and/or liquidating assets in order to pay off the remaining lien of the [SCNB] Judgment (collectively the "Continuing Obligations"). ….

---

[10] In November 2007, 4 B's Realty commenced a foreclosure action in New York Supreme Court to foreclose on the 1530 Property, which was removed to the District Court in July of 2008.  On March 8, 2010, U.S. Magistrate E. Thomas Boyle entered a Report and Recommendation computing the amount due and owing under the 4 B's Realty Mortgage.  On October 12, 2011, U.S. District Judge Spatt entered an Order accepting in part and modifying in part Judge Boyle's Report and Recommendation.

[11] *See* Plaintiff's 7056 Statement, ¶ 47; Defendant's 7056 Counter-Statement, ¶ 47.

> Angelo hereby grants to [] Anthony a security interest in the assets described in Schedule A (the "Collateral") to secure the Continuing Obligations,…

*See* Kushner Decl., Exhibit 7, December 23, 2008 Security Agreement.  Additionally, the Security Agreement contains an anti-modification clause, limiting modifications of the Security Agreement to a "written instrument expressly referring to this Security Agreement." *Id*. at ¶ 8.

The Pledge Agreement provides:

> THIS ASSIGNMENT is made as collateral security for the payment and performance by the [Debtor] ASSIGNOR of all obligations of Assignor under that certain Security Agreement bearing even date herewith.

*See* Kushner Decl., Exhibit 8, December 23, 2008 Pledge Agreement.

Around the time of the Closing, Anthony issued two (2) checks to the IRS in the amounts of $549,364.03 and $75,635.97, satisfying Debtor's obligations to the IRS and discharging the IRS lien on the 1530 Property.[12]  Anthony tendered a check to SCNB in the amount of $150,000 to reduce the amount of the SCNB Judgment.[13]  Anthony tendered a check to 4 B's Realty in the amount of $2,300,000 to satisfy the 4 B's Realty Mortgage.[14]  Thus at or around the Closing, Anthony had tendered a total of $3,075,000 to third parties holding liens against the 1530 Property and thereby exceeded his liability for the $3,055,100 Purchase Price Balance owed to Debtor.

The Closing occurred on December 23, 2008, at which Angelo conveyed a deed to the 1530 Property to Anthony subject to the 4 B's Realty Mortgage and the balance of the SCNB

---

[12] *See* Plaintiff's 7056 Statement, ¶¶ 54-55; Defendant's 7056 Counter-Statement, ¶¶ 54-55.

[13] *See* Plaintiff's 7056 Statement, ¶ 56; Defendant's 7056 Counter-Statement, ¶ 56.

[14] 4 B's Realty rejected Anthony's payment.  *See* Plaintiff's 7056 Statement, ¶ 57; Defendant's 7056 Counter-Statement, ¶ 57.

Judgment in the reduced amount of approximately $548,000.

4 B's Realty did not accept the $2,300,000 tendered at or around the Closing as satisfaction of the 4 B's Realty Mortgage; instead, Anthony satisfied the 4 B's Realty Mortgage by paying the sum of $2,542,521.95 on March 17, 2010.[15]

As to SCNB, while it did accept the partial payment tendered by Anthony, the SCNB Judgment was not satisfied at that time.  After not having been paid for several years, in 2012, SCNB commenced an action to quiet title to the 1530 Property and to proceed with a judicial sale.[16]  By Decision and Order dated January 5, 2015, SCNB was authorized by the New York State Supreme Court to schedule a sheriff's sale of the 1530 Property, and in fact scheduled a sheriff's sale of the 1530 Property for June 2, 2015.[17]  In lieu of losing the 1530 Property to a sheriff's sale, Anthony paid SCNB $900,000 and took an assignment of the SCNB Judgment.[18]

The Parties, presumably purposefully, have not asked the Court to decide to what extent Anthony has a claim against Debtor under the 1530 Contract or the 12/23/08 Agreement; thus, this Court is not called upon to calculate by what amount Anthony paid more than the Purchase Price Balance and would thereby have recourse against Debtor and the Collateral described in the Pledge Agreement.[19]  Further, Debtor correctly and without contravention states that

---

[15] *See* Plaintiff's 7056 Statement, ¶ 62; Defendant's 7056 Counter-Statement, ¶ 62.

[16] *See* Plaintiff's 7056 Statement, ¶ 65; Defendant's 7056 Counter-Statement, ¶ 65.

[17] *See* Plaintiff's 7056 Statement, ¶¶ 71-72; Defendant's 7056 Counter-Statement, ¶¶ 71-72.

[18] *See* Plaintiff's 7056 Statement, ¶ 73; Defendant's 7056 Counter-Statement, ¶ 73.

[19] The Court notes that at the Closing, Anthony had tendered $3,075,000 to third parties holding liens against the 1530 Property. This amount is $19,900 more than the contemplated Purchase Price Balance of $3,055,100 after the applied credits.  Thus if at the time of Closing Anthony assumed the SCNB Judgment, in addition to the amount he tendered to the third parties, Anthony would have been liable for $4,548,000 at Closing ($3,603,100 after credits). Neither party has asked the Court to find that the Parties intended to increase the Purchase Price Balance by over $500,000.  Additionally, Anthony's alleged assumption of the SCNB Judgment cannot be practically credited against the Purchase Price Balance; he had already tendered more than the Purchase Price Balance at Closing and any further credit would result in a negative balance at Closing.

Anthony did not file a proof of claim under the 12/23/08 Agreement or otherwise; as such,

Anthony's only claim against the estate is under the Anthony Claim, arising solely by

assignment of the SCNB Claim.

## **LEGAL ANALYSIS**

### *Summary judgment standard*

Rule 56(c) of the Federal Rules of Civil Procedure, as incorporated by Bankruptcy Rule

7056(c), provides that summary judgment should be granted to the moving party if the Court

determines that "the pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any, show that there is no genuine issue as to any material fact and

that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477

U.S. 317, 322 n.4 (1986) (quoting FED. R. CIV. P. 56(c)) (internal quotation marks omitted). A

movant has the initial burden of establishing the absence of any genuine issue of material fact.

*Celotex*, 477 U.S. at 322-23. A fact is "material" if it "might affect the outcome of the suit under

the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of fact

is genuine "if the evidence is such that a reasonable jury could return a verdict for the

nonmoving party." *Id.* If the movant meets its initial burden, the nonmoving party "must do

more than simply show that there is some metaphysical doubt as to the material facts."

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "If the

evidence is merely colorable, or is not significantly probative, summary judgment may be

granted." *Anderson,* 477 U.S. at 249-50 (internal citations omitted). The Second Circuit has

repeatedly noted that, "[a]s a general rule, all ambiguities and inferences to be drawn from the

underlying facts should be resolved in favor of the party opposing the motion, and all doubts as

to the existence of a genuine issue for trial should be resolved against the moving party." *Brady*

*v. Town of Colchester*, 863 F.2d 205, 210 (2d Cir. 1988) (citing *Celotex Corp.*, 477 U.S. at 330

n.2 (1986) (Brennan, J., dissenting)); *see also Tomka v. Seiler Corp.*, 66 F.3d 1295, 1304 (2d Cir.

1995); *Burrell v. City Univ. of New York*, 894 F. Supp. 750, 757 (S.D.N.Y. 1995). "If, when

viewing the evidence produced in the light most favorable to the non-movant, there is no genuine

issue of material fact, then the entry of summary judgment is appropriate." *Pereira v. Cogan*,

267 B.R. 500, 506 (S.D.N.Y. 2001); *see Burrell*, 894 F. Supp. at 758 (citing *Binder v. Long

Island Lighting Co.*, 933 F.2d 187, 191 (2d Cir. 1991)).

### *Summary judgment should be granted*

Here, there are no genuine issues of material fact that are necessary to be tried on either

side's summary judgment claims. There is no writing by which Anthony became obligated to

pay the SCNB Judgment as if liable thereon. Additionally, neither Parties' conduct established

their intent for Anthony to become obligated on the SCNB Judgment.

New York law provides that this Court must enforce contract provisions clearly

expressing the intent of the parties. *See Greenfield v. Philles Records, Inc.*, 98 N.Y.2d 562, 569

(2002) ("[A] written agreement that is complete, clear and unambiguous on its face must be

enforced according to the plain meaning of its terms." (citations omitted)). *Beth Israel Med. Ctr.

v. Horizon Blue Cross & Blue Shield of New Jersey, Inc.*, 448 F.3d 573, 580 (2d Cir. 2006).

Because the SCNB Judgment was indexed prior to the Closing on December 23, 2008,

Anthony's acquisition of the 1530 Property was subject to, *inter alia*, the SCNB Judgment lien.

Debtor contends that the 12/23/08 Agreement and the circumstances surrounding the Closing

constitutes an agreement by Anthony to become "co-obliged to pay the remaining liens against

the 1530 Property, including the [SCNB] Judgment."[20]  However, this assertion is in direct

---

[20] *See* Plaintiff's 7056 Statement, ¶ 51.

contravention of the 12/23/08 Agreement, and specifically the Security Agreement, which expressly states that the 1530 Contract imposed certain obligations on Debtor which he could not meet, including conveying "good and insurable title", and secured Debtor's Continuing Obligations for any monies Anthony had to pay to clear title to the 1530 Property:

> Anthony may in his discretion, for the account and expense of Angelo (i) pay any amount or do any act which is required to be paid or done by Angelo under this Security Agreement, and which Angelo fails to do or pay as herein required…

*See* Kushner Decl., Exhibit 7, December 23, 2008 Security Agreement.

There is simply no language in the 12/23/08 Agreement or in any other writing that creates any obligation on Anthony's part to pay the SCNB Judgment as if he was personally liable thereon, nor by which he assumes personal liability to SCNB, nor to become "co-obliged to pay the remaining liens against the 1530 Property, including the [SCNB] Judgment." Additionally, the 12/23/2008 Agreement does not limit Anthony's remedies against Debtor to that of a claim for contribution or breach of contract. Had the Parties agreed or even intended that Anthony assume personal liability for the SCNB Judgment, they could have done so by a writing, for example, providing that Debtor had no further obligation to satisfy the SCNB Judgment and that any payment by Anthony to SCNB would not reduce the Purchase Price Balance; they could have agreed that any further payment by Anthony to SCNB would not increase Debtor's liability to Anthony under the 12/23/08 Agreement; however, they did none of these things.[21] Nor is there anything in the Parties' agreement or the summary judgment record which precluded Debtor from himself paying off the SCNB Judgment for which he and his wife were personally liable.

---

[21] As discussed, at the time of Closing Anthony had tendered more money than was due pursuant to the Purchase Price Balance. Thus, any further credit to Anthony would result in a negative balance due Angelo.

Plaintiff points to Anthony's payment, approximately one year after Closing, of the outstanding 4 B's Realty Mortgage as evidence of the Parties' agreement that Anthony would become liable for any remaining liens against the 1530 Property.  However, the 1530 Contract expressly provides for Anthony to advance the monies to satisfy the judgement of foreclosure and sale related to the 4 B's Realty Mortgage and take a credit against the Purchase Price Balance.

> [Anthony] shall advance the sum set forth in a judgment of foreclosure and sale plus all other sums necessary to abate the foreclosure, …. Any such sum advanced pursuant to this section 3.02 shall be credited against the purchase price.

See Kushner Decl., Exhibit 4, Section 3.02.[22]  The 1530 Contract does not provide for Anthony to become personally liable on or assume the 4 B's Realty Mortgage.  Rather, the 1530 Contract is clear and unambiguous in requiring the Parties to credit against the Purchase Price Balance any advancements Anthony makes to satisfy the 4 B's Realty judgment of foreclosure and sale. This also discredits Angelo's assertions that Anthony did not provide consideration at the Closing or that the Parties intended for Anthony to assume the liens on the 1530 Property as consideration at the Closing.  Further, as noted above, contemporaneous with closing of the 1530 Contract and execution of the 12/23/08 Agreement, Anthony had exceeded his liability for the $3,055,100 Purchase Price Balance owed to Debtor by making disbursements in excess thereof.

The Sale Agreement Contracts contained merger clauses providing that the Contracts constituted the Parties' entire agreement and all prior agreements were merged into each of the Contracts.  See Torres v. D'Alesso, 910 N.Y.S.2d 1, 7 (1st Dep't 2010).  The Parties' agreement

---

[22] This Section 3.02 references a foreclosure proceeding related to a mortgage.  Although the section does not specify whether it is referring to the SCNB Judgment foreclosure or the 4 B's Realty Mortgage foreclosure, the SCNB Judgment foreclosure proceeding did not occur until approximately four years after the 1530 Contract and did not arise from a mortgage.

was reduced to a writing, and the parol evidence rule bars evidence of any prior or contemporaneous oral agreement where such agreement is offered to vary or add to the terms of the writing.  N.Y. Gen. Oblig. Law § 15–301; *In re Cromer*, 153 B.R. 391, 396 (Bankr. E.D.N.Y. 1993).  Additionally, General Obligations Law § 5–701(a)(2) provides, in relevant part, "Every agreement, promise or undertaking is void, unless it or some note or memorandum thereof be in writing, …, if such agreement, promise or undertaking: …(2) Is a special promise to answer for the debt, default or miscarriage of another person;…" *See Dahan v. Weiss*, 991 N.Y.S.2d 119, 120 (2d Dep't 2014) (holding statute of frauds barred recovery for breach of contract on the theory that the purchaser of real property agreed to assume existing mortgages on the properties, where purchaser had not executed a notarized written agreement to do so.)  Thus Plaintiff's assertion that Anthony assumed the SCNB Judgment must fail as a matter of law as barred under New York's statute of frauds.

Further, there is nothing in the 1530 Contract or the 12/23/08 Agreement that imposes a time period by which the title to the 1530 Property had to be cleared post-closing; said otherwise, the Parties agreed to close and convey title to that property to Anthony in 2008 knowing the encumbrances that Debtor was supposed to cure pre-closing had to be paid post-closing.  Had Debtor and Anthony agreed or intended to agree to cap the amount by which Anthony could reduce the Purchase Price Balance for clearing any encumbrance Debtor had been obligated to clear, they could have expressed that time frame in writing; yet even now, 9 years later, there is no writing which establishes a cutoff date for the extinguishment of any of the encumbrances against the 1530 Property and their impact on the Purchase Price Balance or the 12/23/08 Agreement.  There is no action taken by Anthony which is inconsistent with his rights under the Parties' agreements nor which excuses Debtor's obligations under those agreements.

Debtor neither challenges the validity of the SCNB Judgment nor the assignability of the SCNB Judgment. *See* N.Y. Gen. Oblig. Law § 13-103, providing for assignment of a judgment. As noted, Debtor concedes the absence of a writing by which Anthony was or agreed to become personally liable on the SCNB Judgment; thus, Debtor's reliance on *Harbeck v. Vanderbilt*, 20 N.Y. 395, 397-98 (1859) and *Benedictine Hosp. v. Glessing*, 935 N.Y.S.2d 683 (3d Dep't 2011) is misplaced, as Debtor and Anthony are not parties who are jointly liable on the SCNB Judgment, Anthony was not a defendant in the underlying civil action, nor is there any evidence that the SCNB Judgment was satisfied by Anthony rather than assigned to him. Similarly, the issue here is not whether Anthony has a claim for contribution which he failed to preserve by not filing a timely proof of claim, as, again, Debtor and Anthony are not parties who are jointly liable on the SCNB Judgment. Thus, Debtor's reliance on *Boccia v. Murphy*, 2 Mis.3d 549, 770 N.Y.S.2D 592 (N.Y. Sup. Ct. Queens Cty. 2003) is misplaced.

As there are clear and unambiguous contracts between the Parties, whose conduct is wholly consistent with those contracts, the Court does not find the existence of a contract implied-in-fact between the brothers. A contract implied-in-fact may result as an inference from the facts and circumstances of the case, although not formally stated in words, and is derived from the presumed intention of the parties as indicated by their conduct. *Beth Israel Medical Center*, 448 F.3d at 582 (quoting *Jemzura v. Jemzura*, 36 N.Y.2d 496 (1975) (internal citations omitted)). The terms of an implied-in-fact contract turn on the conduct of the parties. *See Watts v. Columbia Artists Mgmt. Inc.*, 591 N.Y.S.2d 234 (3d Dep't 1992). Theories of express contract and contract implied-in-fact are mutually exclusive. *Bowne of New York, Inc. v. International 800 Telecom Corp.*, 576 N.Y.S.2d 573 (1st Dep't 1991). "A contract cannot be implied in fact … where there is an express contract covering the subject-matter involved…" *Miller v. Schloss*,

17

218 N.Y. 400, 406–07 (1916).

Debtor points to the fact that Anthony did not pay Angelo $3,055,100 at the Closing as evidence of the Parties' intention for Anthony to become liable on the SCNB Judgment. However, as discussed above, the 1530 Contract provides for Anthony to make advancements on the 4 B's Realty Mortgage and for the Parties to credit those advancements against the Purchase Price Balance, which is exactly what the Parties did in this transaction. Debtor's assertion is only evidence of his failure to provide clear title to the 1530 Property, which supports the clear and unambiguous reading of the Security Agreement, that Debtor had Continuing Obligations to satisfy the liens under the 1530 Contract. Again, contemporaneous with closing of the 1530 Contract and execution of the 12/23/08 Agreement, Anthony had exceeded his liability for the $3,055,100 Purchase Price Balance owed to Debtor by making disbursements in excess thereof.

Even if (1) an express contract covering the subject matter did not exist, and (2) the New York statute of frauds did not require a writing for Anthony to assume Debtor's liability, the circumstances do not support an inference that Debtor and Anthony intended to agree to an implied contract under which Anthony can be found to have agreed to be personally liable for the SCNB Judgment. *See Beth Israel Medical Center*, 448 F.3d 573; *Anesthesia Group of Albany, P.C. v. State*, 766 N.Y.S2D 448 (3d Dep't 2003). Anthony could not have had a potential windfall by satisfying the liens for less than the amounts owed because as of the Closing, Anthony had tendered to third parties over $19,000 more than the Purchase Price Balance and was not unjustly enriched from the transaction. The evidence before the Court is clear that Anthony did not satisfy or become liable on the SCNB Judgment. *See Ellis v. Provident Life & Accident Ins.*, 3 F.Supp.2d 399, 409 (S.D.N.Y. 1998) (contract may not be implied-in-fact where facts are inconsistent with its existence), *aff'd*, 172 F.3d 37 (2d Cir. 1999); *In re AppOnline.com,*

18

*Inc.*, 315 B.R. 259, 275 (Bankr. E.D.N.Y. 2004).

Because Debtor has expressly requested a declaratory judgment that the SCNB Judgment, now the Anthony Claim, is unenforceable on an implied assumption of debt theory, and because Anthony has requested a declaratory judgment that he may enforce the SCNB Judgment, and because there is no properly plead request from either party to determine the amount due by Debtor to Anthony under the 12/23/08 Agreement, Debtor's declaratory judgment request is denied, Anthony's is granted, and this Court declares that Anthony may fully enforce the SCNB Judgment, now Anthony's Claim.  As a result, Anthony is entitled to receipt of the funds in the Escrow Account, pursuant to prior Orders of this Court, and as acknowledged by Debtor.

However, because neither party has addressed the Supplemental Objection under which Debtor asserts the Anthony Claim should be reduced by the amount of $29,415.68 due to a calculative error by SCNB, this Court will conduct a further hearing to determine that issue and to liquidate the amount due and owing under the Anthony Claim as requested in the Anthony Motion. [dkt item 38]

### *Anthony's request for sanctions is denied*

Within Anthony's Answer and Counterclaim [dkt item 6] and his Memorandum of Law in support of Defendant's Motion for Summary Judgment, Anthony requests attorney's fees for defending this adversary proceeding as a frivolous action, and incidentally requests this Court award attorney's fees under the Pledge Agreement which is part of the 12/23/08 Agreement. [dkt item 38, p. 2]  To the extent this is a request for Rule 9011 sanctions, it is denied as procedurally improper.

FRBP 9011(c)(1) authorizes a sanctions motion to be brought by motion or on the court's own initiative.  When by motion, FRBP 9011(c)(1)(A) requires the motion be filed separately

from other motions or requests, describe the specific conduct alleged to violate FRBP 9011(b); and be served pursuant to FRBP 7004. FRBP 9011(c)(1)(A) further provides a safe harbor provision, as it requires that a FRBP 9011 motion for sanctions "may not be filed with or presented to the court unless, within 21 days after service of the motion (or such other period as the court may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected . . . ." As Anthony has failed to procedurally comply with Rule 9011, his request for sanctions is denied. *See e.g. Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 767 (1980) ("Like other sanctions, attorney's fees certainly should not be assessed lightly or without fair notice and an opportunity for a hearing on the record.")

To the extent that Anthony may have a right to recover attorney's fees as a secured creditor under the SCNB Judgment, neither party has requested this Court liquidate the amount of the Anthony Claim in the context of these summary judgment proceedings. This Court will not go beyond the relief requested in the Parties' live pleadings. Thus, this Court will conduct a further hearing to determine Anthony's request for attorney's fees under the Pledge Agreement.

## CONCLUSION

Based on the foregoing, it is hereby

**ORDERED**, that Plaintiff's Summary Judgment Motion is denied and Defendant's Summary Judgment Motion is granted; this Court declares that Anthony as assignee of the SCNB Judgment may fully enforce the Anthony Claim against Debtor and any property encumbered by the SCNB Judgment, consistent with the confirmed Plan and prior Orders of this Court; and it is further

**ORDERED**, that the Escrow Account held by the Escrow Agent shall be disbursed to Anthony; and it is further

**ORDERED**, that the Parties shall appear before the Court on **November 28, 2017 at 2:00 p.m.** for a pre-trial conference to set a schedule for the liquidation of the amount of the Anthony Claim; and it is further

**ORDERED**, that the Clerk of the Court shall serve a copy of this Order on Plaintiff and the Defendant.



**Dated: October 26, 2017**
    **Central Islip, New York**

                                        **Alan S. Trust**
                        **United States Bankruptcy Judge**